UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARINA TOMA,

        Petitioner,                        Case Number 20-11071

v.                                                   Honorable David M. Lawson

REBECCA ADDUCCI, Detroit District
Director, United States Immigration and
Customs Enforcement, MATTHEW T. ALBENCE,
Director, United States Immigration and
Customs Enforcement, KEVIN MCALEENAN,
Secretary of the United States Department of
Homeland Security, and MERRICK GARLAND,
United States Attorney General,

        Respondents.

_____/

**OPINION AND ORDER CONDITIONALLY GRANTING
PETITION FOR WRIT OF HABEAS CORPUS**

      This case returns to court on petitioner Marina Toma's petition for a writ of habeas corpus. Toma filed her petition on May 1, 2020, and four days later filed an emergency motion for a temporary restraining order (TRO). Toma, a 33-year-old Iraqi national who is currently detained by the United States Immigration Customs and Enforcement Agency ("ICE") at the Chippewa Correctional Facility in Sault Ste. Marie, Michigan, initially sought immediate relief because she feared for her health due to the COVID pandemic. The Court denied her motion, which it treated as a motion for a preliminary injunction.

      Toma had raised an alternative basis for habeas relief based on the length of her detention. She has been in ICE custody since October 8, 2019, scheduled to be removed to Iraq because of her conviction of an "aggravated felony" (shoplifting). The Immigration Court granted her petition for withholding of removal under the United Nations Convention Against Torture. The government appealed that decision, and Toma remained in custody while the appeal was pending.

She alleged that her detention in excess of six months is unconstitutional because she will not be removed in the foreseeable future due to the pandemic and political turmoil in Iraq. The Court rejected that argument because it determined that the government's appeal of the CAT ruling rendered the unappealed removal order non-final and therefore the six-month presumption of unreasonableness for detained deportees discussed by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), did not apply. However, a subsequent decision by the Supreme Court cast this Court's decision in a different light and the parties were permitted to file supplemental briefs. Because the removal order is in fact a final order, Toma's detention must be reexamined in light of the Due Process Clause as elucidated by *Zadvydas*.

I.

Recapping the facts, which were discussed in more detail in the Court's previous opinion in this case, Toma is an Iraqi national who was admitted to the United States as a lawful permanent resident in 1996 when she was eight years old. She is 34 years old now and resided in Macomb County, Michigan before her present detention. She has a young child and maintains little to no connection with Iraq. She cannot read nor write the Arabic language. She does not have an Iraqi passport, travel document, or identity card, and she does not have family in Iraq.

Toma's criminal convictions for drug and theft offense resulted in the initiation of removal proceedings on at least two occasions. In April 2010, ICE charged her as removable under 8 U.S.C. § 1227(a)(2)(B)(i), but in August 2010 the Immigration Court granted her application for cancellation of removal under 8 U.S.C. § 1229b(a). ICE again initiated removal proceedings against Toma in May 2018, charging her as removable under 8 U.S.C. § 1227(a)(2)(A)(iii), which subjected her to mandatory detention under 8 U.S.C. § 1226(c)(1)(B). She was in Michigan Department of Corrections (MDOC) custody at the time for shoplifting.

The MDOC released Toma to ICE custody on October 8, 2019, and she eventually found her way to the Chippewa County Correctional Center in Sault Ste. Marie, Michigan, where she has been detained since December 17, 2019.

On March 3, 2020, the Immigration Court granted Toma withholding of removal under the United Nations Convention Against Torture (CAT), finding that she faced "a particularized threat of torture to which the Iraqi government either acquiesces or is willfully blind." The government appealed that decision to the Board of Immigration Appeals (BIA) on April 1, 2020. The parties recently informed the Court that the BIA remanded the case to the Immigration Court on November 25, 2020, with directions to furnish a more fulsome analysis of the testimony of Toma's expert witnesses. The Immigration Court issued a new decision on March 21, 2021, which again granted Toma's application under CAT. There is no evidence that the government has appealed that decision, but it has informed the Court that it intends to do so.

Toma nominally filed her habeas petition in this Court under 28 U.S.C. § 2254. The Court construed it as filed under 28 U.S.C. § 2241. Addressing her prolonged detention claim, the Court held that Toma was not subject to a final order of removal because the government had appealed the Immigration Judge's ruling granting her CAT petition, and therefore she was not being detained under 8 U.S.C. § 1231(a)(2) or (6). Instead, because the Court considered the removal order non-final, the Court believed that she was subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B), which requires "[t]he Attorney General [to] take into custody any alien who . . . is deportable by reason of having committed any offense covered in section [1227(a)(2)(a)(iii)]." Section 1227(a)(2)(A)(iii) covers "aggregated felonies," such as Toma's October 2018 conviction for larceny in a building. Therefore, the caselaw condemning prolonged and indefinite detention under section 1231(a)(6), which originated with *Zadvydas*, was deemed not to apply.

On June 1, 2020, the Supreme Court decided *Nasrallah v. Barr*, --- U.S.---, 140 S. Ct. 1683 (2020), which drew a sharp distinction between final orders of removal and orders adjudicating CAT petitions, albeit in another context. Because the distinctions drawn in that case were relevant to the issue raised by the petitioner here, the Court directed the parties to file supplemental briefs. Toma argues that in *Nasrallah*, the Supreme Court explained that an order granting or denying relief under the Convention Against Torture does not disturb a final order of removal. She reasons that because she won her release by success on her CAT petition, her continued detention can be authorized only by 1231(a)(6), under which she can be held only for a reasonable time, which has lapsed. The government does not accept Toma's reading of *Nasrallah*; it insists that although Toma received a "final" order of removal, her removal order is not "administratively final" until all proceedings, which include her appeal with the BIA, are concluded. The government has offered no evidence that Toma will be removed to Iraq or any other country "in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

## II.

Toma's habeas petition is based on the liberty protection provision of the Fifth Amendment's Due Process Clause. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693.

### A.

Once an alien has been ordered to be deported from the United States, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section

referred to as the 'removal period')," 8 U.S.C. § 1231(a)(1)(A), and, during that period, "shall detain the alien," *id*. § 1231(a)(2). Congress has authorized the Attorney General (now the Secretary of the Department of Homeland Security) to detain such an alien beyond the 90-day removal period under certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [Secretary] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id*. § 1231(a)(6). "By its terms, this provision applies to three categories of aliens: (1) those ordered removed who are inadmissible under § 1182, (2) those ordered removed who are removable under § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) those ordered removed whom the Secretary determines to be either a risk to the community or a flight risk." *Clark v. Martinez*, 543 U.S. 371, 377 (2005). Toma falls within the second category.

The Supreme Court determined that there must be temporal limits on the government's discretionary authority to detain an alien pending removal under section 1231(a)(6). The *Zadvydas* Court held that reading section 1231(a)(6) to authorize indefinite detention would render the statute unconstitutional. *Zadvydas*, 533 U.S. at 690. Therefore, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id*. at 682. The Court determined that six months was presumed to be reasonable. However, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

These limits and presumptions apply only if the government detains the alien under section 1231(a)(6). *Hamama v. Adduci*, 946 F.3d 875, 879-80 (6th Cir. 2020) (citing *Jennings v.*

*Rodriguez*, --- U.S.---, 138 S. Ct. 830, 846 (2018)). After Toma was arrested and removal proceedings were initiated, the government detained her under the authority of section 1226(c)(1)(B), which addresses aliens whose removal proceedings are pending. In its earlier opinion on the preliminary injunction motion, this Court held that Toma's removal proceedings were still pending because the Immigration Judge withheld removal and the government appealed that decision. Because there was no final order of removal, the Court reasoned that section 1231(a)(6) and the limits on that authority imposed by *Zadvydas* did not apply.

B.

In *Nasrallah v. Barr*, the Supreme Court addressed a "narrow question" of law that split the circuit courts: whether a statute (8 U.S.C. §§ 1252(a)(2)(C)-(D)) that precluded judicial review of the BIA's factual findings in a court challenge to a final removal order also precludes judicial review of that alien's factual challenges to an administrative order denying relief under the Convention Against Torture. 140 S. Ct. at 1688. The Court held that the statute does not also bar judicial review of factual challenges to a CAT order, and it premised that conclusion on a finding that "[a] CAT order is distinct from a final order of removal and does not affect the validity of a final order of removal." *Id.* at 1694.

In that case, Nidal Nasrallah, a Lebanese national, was found removable because of his conviction of receiving stolen property, but the Immigration Court granted him relief under CAT, prohibiting his removal to Lebanon because he would likely be tortured if returned there. *Id.* at 1688. The government appealed the decision to the Board of Immigration Appeals (BIA), which vacated the Immigration Court's order granting CAT relief and ordered that he be removed to Lebanon. *Ibid.* Nasrallah appealed the BIA's decision to the Eleventh Circuit, which affirmed the BIA's decision and declined to review its factual challenges, reasoning that the statute that bars

judicial review of factual challenges to a "final order of removal," 8 U.S.S.C. § 1252(a)(2)(C)-(D), also bars factual challenges to CAT orders. *Id.* at 1689. The Supreme Court reversed, holding that the limits on judicial review of "final orders" outlined in § 1252(a)(2)(C) and (D) do not preclude factual challenges to CAT orders because they are not "final orders." *Id.* at 1694. In so holding, the Court overruled binding precedent from eight circuits, including the Sixth. *Id.* at 1689 (overruling *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)). The Court explained that, not only are CAT orders not "final orders," but they also do not disturb final removal orders:

> A CAT order is not itself a final order of removal because it is not an order "concluding that the alien is deportable or ordering deportation." [8 U.S.C. § 1101(a)(47)(A).] As the Government acknowledges, *a CAT order does not disturb the final order of removal*. An order granting CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country. But the noncitizen still "may be removed at any time to another country where he or she is not likely to be tortured." 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f).

*Id.* at 1691 (emphasis added). The Supreme Court made clear that "[f]or purposes of this statute, final orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." *Ibid.* And because "a CAT claim does not affect the validity of [a] final order of removal," it "therefore does not merge into the final order of removal." *Ibid.*

C.

The Sixth Circuit declared that "*Jennings* restored the constitutional distinction between pre- and post-removal order detention." *Hamama*, 946 F.3d at 879. As noted, the government initially detained Toma under section 1226(c). However, the Supreme Court has explained that "detention under § 1226(c) has 'a definite termination point': the conclusion of removal proceedings." *Jenning*, 138 S. Ct. at 846 (quoting *Demore v. Kim,* 538 U.S. 510, 529 (2003)). Putting a finer point on it, the Court emphasized that "that 'definite termination point' — and not

some arbitrary time limit devised by courts — marks the end of the Government's detention authority under § 1226(c)." *Ibid.*

Once the Immigration Court issued its final order of removal, which Toma did not appeal, its authority to detain her could not be sustained by section 1226(c). 8 U.S.C. § 1101(a)(47)(A)(ii). The final order of removal marked the beginning of the 90-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A), which could be extended for a "reasonable time" by section 1231(a)(6). *Zadvydas*, 533 U.S. at 682. Of course, the Immigration Court also granted Toma relief under CAT, but that did "not affect the validity of the final order of removal." *Nasrallah*, 140 S. Ct. at 1691. Because Toma, therefore, is now held under section 1231(a)(6), this Court's previous determination that *Zadvydas* and the cases that follow it do not afford her protection under the Due Process Clause was incorrect.

D.

The government resists that conclusion, arguing that the Supreme Court's holding in *Nasrallah* is "narrow"; that is, it applied only to the jurisdictional limitations outlined in 8 U.S.C. § 1252(a)(2)(C)-(D). *Nasrallah*, 140 S. Ct. at 1688. But that argument ignores the Court's textual analysis. The Court made clear that "[i]n the deportation context, a final 'order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Id.* at 1691 (quoting § 1101(a)(47)(A)). The Court did not limit this definition to the "judicial review" context.

The government also argues that an order of removal is not final if it is subject to administrative review as part of an appeal that grants relief from removal under CAT. It contends that the removal period begins on "[t]he date the order of removal becomes *administratively* final." 8 U.S.C. § 1231(a)(1)(B)(i) (emphasis added). It points to a regulation that states that "[a]n order of removal made by the immigration judge at the conclusion of the proceedings under section 240

of the [Immigration and Nationality] Act shall become final . . . (a) Upon dismissal of an appeal by the Board of Immigration Appeals . . . ." 8 C.F.R. § 1241.1. And it reasons that "proceedings" can include relief from removal, so that when the BIA reviews an order on a CAT petition that is part of a proceeding which includes a removal order, the removal order cannot be "final." In support, the government references the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), under which noncitizens may seek CAT relief, and which states that "a CAT order is reviewable 'as part of the review of a final order of removal' under 8 U.S.C. § 1252." *Nasrallah*, 140 S. Ct. at 1691.

That argument rubs against the definitional statute that states that an "order of deportation" "shall become final upon the earlier of . . . a determination by the Board of Immigration Appeals affirming such order; or . . . the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(A). Toma did not appeal the order of deportation, and therefore it became "final" — per statute — when her appeal period expired.

Moreover, the Supreme Court has rejected an argument very similar to the government's. In *Nasrallah*, the government, citing *Foti v. INS*, 375 U.S. 217 (1963), argued that a "final order of deportation" is defined to include "all determinations made during and incident to the administrative proceeding" on removability. *Nasrallah*, 140 S. Ct. at 1692 (citing *Foti*, 375 U.S. at 229). The Court rebuffed that contention because "*Foti*'s interpretation of the INA as it existed as of 1963 no longer applies." *Ibid.* The Court explained that "[s]ince 1996, the INA has defined final 'order of deportation' more narrowly than this Court interpreted the term in *Foti*." *Ibid.* Driving the point home, the Supreme Court explained that "an order denying CAT relief does not

fall within the statutory definition of an 'order of deportation' because it is not an order 'concluding that the alien is deportable or ordering deportation.'" *Ibid.* (citing 8 U.S.C. § 1101(a)(47)(A)).

The Court also rejected a similar argument about FARRA's impact on the definition of final removal order:

> To be sure, as noted above, FARRA provides that a CAT order is reviewable "as part of the review of a final order of removal" under 8 U.S.C. § 1252. § 2242(d), 112 Stat. 2681–822; see also 8 U.S.C. § 1252(a)(4). Likewise, § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." § 1252(b)(9). But *FARRA and § 1252(b)(9) simply establish that a CAT order may be reviewed together with the final order of removal, not that a CAT order is the same as, or affects the validity of, a final order of removal*.

*Id.* at 1691 (emphasis added).

The government also attacks Toma's position as impractical because it could mean that a removal order under section 1231(a) would be final before an application for relief is finally adjudicated. The government says that it would face the dilemma of having to choose to honor the Congressional mandate to remove an alien while an appeal of a CAT adjudication was pending or allow the alien to pursue her rights. And if it chooses the latter, then it runs the risk of having to release dangerous individuals into the community.

That is a false dichotomy. It should be clear by now that an alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). The point of *Zadvydas* is that the detention may not be indefinite, and after six months the government need only show that removal is likely "in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. How that scenario would play out when an appeal of a CAT determination is pending in the BIA should be obvious. Even if the appeal pends into the six-month presumption period, the

government can continue detention by showing that removal is imminent upon conclusion of the proceedings.

E.

That brings us back to Toma's present circumstances. She has been in ICE custody since October 8, 2019, but a final order of removal was not entered until March 3, 2020. It is on that date that the government's authority to detain her migrated from 8 U.S.C. § 1226(c)(1)(B) to section 1231(a)(6). She has been in ICE custody under that statute now for more than a year.

The Supreme Court held in *Zadvydas* that detention of an alien subject to removal due to a criminal conviction will be presumptively reasonable for up to six months. However, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Ibid*. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Ibid.*

Toma argues that her removal from the United States is not substantially likely in the reasonably foreseeable future because of the government's pending appeal, the travel restrictions wrought by the global COVID-19 pandemic, and the political turmoil in Iraq.

The pendency of the government's appeal alone is not and cannot be a basis for finding that removal cannot be accomplished within a reasonable time. The appeal process, like the government's authority to detain an alien under 8 U.S.C. § 1226(c), "has 'a definite termination

point.'" *Jennings*, 138 S. Ct. at 846. Nor, however, can the pendency of an appeal allow the government to sidestep its obligation to demonstrate that removal can be accomplished in the reasonably foreseeable future once the appeal concludes. Put another way, although a pending appeal may explain the delay in removing a deportable alien, it has no bearing on the question of the likelihood that removal can be achieved.

The global pandemic does not appear to pose a current obstacle to removal. The pandemic's impact on travel to Iraq seems to have abated. *See COVID-19 Information*, U.S. Embassy & Consulates in Iraq (Apr. 19, 2021), https://iq.usembassy.gov/covid-19-information. ("National airports are open. Entry and exit requirements are subject to change on short notice.").

However, the government has made no effort in its briefing to demonstrate that Toma can be removed to Iraq or any other country amid the political turmoil that continues to plague the country. *See Hamama v. Adducci,* 349 F. Supp. 3d 665, 692-93 (E.D. Mich. 2019), *rev'd on other grounds*, 946 F.3d 875 (6th Cir. 2020) (finding that there is no significant likelihood that Iraqi nationals will be removed to Iraq in the reasonably foreseeable future due to political turmoil). It has offered no evidence that the political turmoil has abated. Moreover, the government made no attempt to demonstrate that Toma's removal — to Iraq or elsewhere — would be accomplished within a reasonable time, as *Zadvydas* requires after a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Ibid.* Instead, the government continues to base its entire argument on the non-finality of the order of removal, a position that cannot be sustained.

III.

Toma's continued detention without any reasonable prospect of removal in the foreseeable future violates her rights under the Fifth Amendment's Due Process Clause. She is held "in custody in violation of the Constitution." 28 U.S.C. § 2241(c)(3).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **CONDITIONALLY GRANTED**.

It is further **ORDERED** that the respondents now must release the petitioner subject to supervision under the regulations prescribed by the Attorney General under the authority of 8 U.S.C. § 1231(a)(3).

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated: April 23, 2021